# RICHARDSON v. UNITED STATES

No. 82–2113.   Argued March 20, 1984—Decided June 29, 1984

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, POWELL, and O'CONNOR, JJ., joined. BRENNAN, J., filed an opinion concurring in part and dissenting in part, in which MARSHALL, J., joined, *post*, p. 326.   STEVENS, J., filed a dissenting opinion, *post*, p. 332.

*Allan M. Palmer* argued the cause and filed briefs for petitioner.

*Michael W. McConnell* argued the cause *pro hac vice* for the United States.   With him on the brief were *Solicitor*

General Lee, Assistant Attorney General Trott, Deputy Solicitor General Frey, and Kathleen A. Felton.

JUSTICE REHNQUIST delivered the opinion of the Court.

The jury trying petitioner acquitted him of one of several counts, but was unable to agree as to the others. The District Court declared a mistrial as to these counts of the indictment and set them down for retrial. Petitioner moved to bar his retrial, claiming that a second trial would violate the Double Jeopardy Clause of the Fifth Amendment because evidence sufficient to convict on the remaining counts had not been presented by the Government at the first trial. The District Court denied this motion, and the Court of Appeals dismissed petitioner's appeal from that ruling for lack of jurisdiction under 28 U. S. C. § 1291. We now reverse that jurisdictional determination and proceed to address the merits of petitioner's double jeopardy claim. We find the claim unavailing, since it lacks its necessary predicate, there having been no termination of original jeopardy.

Petitioner was indicted in the United States District Court for the District of Columbia on two counts of distributing a controlled substance, in violation of 21 U. S. C. § 841(a)(1), and one count of conspiring to distribute a controlled substance, in violation of 21 U. S. C. § 846. Twice—at the close of the Government's case in chief and before submission of the case to the jury—he moved unsuccessfully for judgment of acquittal on the ground that the Government had failed to introduce sufficient evidence to warrant a finding of guilt beyond a reasonable doubt.[1] The jury acquitted petitioner of

---

[1] The substance of petitioner's claim that the Government's evidence was insufficient to convict is that the evidence established that petitioner was involved in only one drug transaction, an event which alone, he argues, is insufficient to support a charge of conspiracy. Alternatively, petitioner argues that even if the evidence supports a finding that two drug sales took place, these sales were so isolated in time that no conspiracy could be inferred from their occurrence. Petitioner's case depends, however,

one substantive narcotics violation, but was unable to reach a verdict on the two remaining counts. The District Court declared a mistrial as to these two remaining counts and scheduled a retrial, at which point petitioner renewed his motion for judgment of acquittal based on the legal insufficiency of the evidence. In addition, petitioner argued at this time that retrial was barred by the Double Jeopardy Clause of the Fifth Amendment.[2] The District Court denied both motions and petitioner appealed.

The Court of Appeals for the District of Columbia Circuit dismissed petitioner's appeal for want of jurisdiction. 226 U. S. App. D. C. 342, 702 F. 2d 1079 (1983). The Court of Appeals reasoned that its jurisdiction to review petitioner's double jeopardy claim depended upon the appealability of the District Court's ruling on petitioner's motion for judgment of acquittal based on the insufficiency of the evidence. Because the District Court's ruling on the latter motion was not a final judgment appealable under 28 U. S. C. § 1291, that ruling could only be reviewed if it fell within the collateral-order doctrine enunciated by this Court in *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541 (1949). The court held that the ruling on the legal sufficiency of the evidence was "anything but collateral," and thus it lacked appellate jurisdiction to review that claim. 226 U. S. App. D. C., at 344–345, 702 F. 2d, at 1081–1082. Since the merits of petitioner's double jeopardy claim depended entirely on reviewing the legal sufficiency of the evidence, the court concluded that petitioner had failed to present a double jeopardy claim

---

on excluding from consideration all statements made by his alleged co-conspirator implicating petitioner in the drug scheme. In light of our holding that petitioner has no valid double jeopardy claim, we have no occasion to address this argument.

[2] The text of the Double Jeopardy Clause of the Fifth Amendment reads: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

which could be reviewed at that point.[3]   We granted certiorari to review the decision of the Court of Appeals, 464 U. S. 890 (1983), because of a conflict with the decision reached by the Third Circuit in *United States* v. *McQuilkin*, 673 F. 2d 681 (1982),[4] and because of the implications of the decision below for the administration of criminal justice.

Petitioner contends that under our decisions in *Abney* v. *United States*, 431 U. S. 651 (1977), and *Burks* v. *United States*, 437 U. S. 1 (1978), he is entitled to an interlocutory review of his claim that a second trial is barred by the Double Jeopardy Clause because the Government failed to introduce legally sufficient evidence to go to the jury at the first trial. *Burks*, however, involved no issue of interlocutory review, since it was an appeal from a final judgment of conviction. But *Abney* arose in the context of an interlocutory appeal. There we held that denial of a defendant's pretrial motion to dismiss an indictment on double jeopardy grounds was appealable as a "collateral order" under 28 U. S. C. § 1291. Despite the strong congressional policy embodied in § 1291 against interlocutory appeals in criminal cases, *DiBella* v. *United States*, 369 U. S. 121, 126 (1962), we held that the claim in *Abney* met the three-part test established in *Cohen* v. *Beneficial Industrial Loan Corp.*, *supra*, because a double jeopardy claim contested the very power of the Government to bring a person to trial, and the right would be significantly impaired if review were deferred until after the trial.   We said:

_____

[3] Judge Scalia dissented, arguing that under our decision in *Abney* v. *United States*, 431 U. S. 651 (1977), the court had jurisdiction under 28 U. S. C. § 1291 to review petitioner's double jeopardy claim.   Judge Scalia would have held, however, that petitioner failed to raise a meritorious double jeopardy claim.

[4] Two other Circuits that have considered the question have reached the same conclusion as the Court of Appeals in this case.   See *United States* v. *Ellis*, 646 F. 2d 132, 135 (CA4 1981); *United States* v. *Becton*, 632 F. 2d 1294, 1297 (CA5 1980), cert. denied, 454 U. S. 837 (1981).

"Obviously, [this] aspec[t] of the guarantee's protections would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." 431 U. S., at 662 (footnote omitted) (emphasis in original).

The Government contends, and the Court of Appeals agreed, that the double jeopardy claim raised by petitioner in this case does not meet the three-part test of the *Cohen* case. It argues that resolution of the double jeopardy claim inevitably involves evaluation of the sufficiency of the evidence against petitioner at the first trial, and therefore the claim is not completely collateral to the merits of the charge against petitioner. Cf. *Abney, supra,* at 660. To dispose of petitioner's double jeopardy claim, the reviewing court would have to conclude that the evidence introduced at the first trial on these counts was insufficient as a matter of law to convict petitioner. This canvassing of the record would be indistinguishable from an assessment of the sufficiency of the evidence that would be reviewed after a judgment of conviction, and, of course, would go to the heart of the Government's case on the merits. The Government and the Court of Appeals, therefore, are of the view that petitioner's double jeopardy claim may be only reviewed following a final judgment of conviction after a second trial.

All of this may be conceded, and yet we think that the collateral-order doctrine applied in *Abney* should not be read so narrowly as to bar from interlocutory review the type of

double jeopardy claim asserted here. Petitioner seeks review of the sufficiency of the evidence at his first trial, not to reverse a judgment entered on that evidence, but as a necessary component of his separate claim of double jeopardy. While consideration of petitioner's double jeopardy claim would require the appellate court to canvass the sufficiency of the evidence at the first trial, this fact alone does not prevent the District Court's order denying petitioner's double jeopardy claim from being appealable.

The Government understandably expresses concern that interlocutory appeals of this nature may disrupt the administration of criminal justice. But allowing appeals such as this is completely consistent with the Court's admonition in *Cohen* that the words "final decision" in § 1291 should have a "practical rather than a technical construction." *Cohen*, 337 U. S., at 546. Petitioner's first trial had ended and his second trial had been rescheduled before he asserted his double jeopardy claim to bar retrial. There was thus no effort to interrupt or delay proceedings during the time that a jury was empaneled or that the District Court had under advisement motions relating to the first trial. Moreover, we have indicated that the appealability of a double jeopardy claim depends upon its being at least "colorable," *United States* v. *MacDonald*, 435 U. S. 850, 862 (1978), and that "frivolous claims of former jeopardy" may be weeded out by summary procedures, *Abney, supra*, at 662, n. 8. Cf. *United States* v. *Head*, 697 F. 2d 1200, 1204 (CA4 1982). These limitations, together with the continuing requirement that the order of the District Court which is appealed from be a "final" decision on the double jeopardy claim, provide adequate insurance against the evils which the Government fears. Thus, we hold that petitioner has raised a colorable double jeopardy claim appealable under 28 U. S. C § 1291.

Turning to the merits of petitioner's double jeopardy claim, we reject it. He asserts that if the Government failed to introduce sufficient evidence to establish his guilt beyond a

reasonable doubt at his first trial, he may not be tried again following a declaration of a mistrial because of a hung jury. While petitioner bases this contention on *Burks* v. *United States*, 437 U. S. 1 (1978), we do not agree that *Burks* resulted in the sweeping change in the law of double jeopardy which petitioner would have us hold. In *Burks* we held that once a defendant obtained an unreversed appellate ruling that the Government had failed to introduce sufficient evidence to convict him at trial, a second trial was barred by the Double Jeopardy Clause. *Id.*, at 18. We overruled prior decisions such as *Bryan* v. *United States*, 338 U. S. 552 (1950), in which we held that if a defendant successfully sought reversal of his conviction on appeal because of insufficient evidence, retrial following such reversal was not barred by the Double Jeopardy Clause.

The Court in *Burks* did not deal with the situation in which a trial court declares a mistrial because of a jury's inability to agree on a verdict. Thus, petitioner's reliance on *Burks* in the context of the present case can be supported only if that decision laid down some overriding principle of double jeopardy law that was applicable across the board in situations totally different from the facts out of which it arose. But it is quite clear that our decision in *Burks* did not extend beyond the procedural setting in which it arose. Where, as here, there has been only a mistrial resulting from a hung jury, *Burks* simply does not require that an appellate court rule on the sufficiency of the evidence because retrial might be barred by the Double Jeopardy Clause. See *Justices of Boston Municipal Court* v. *Lydon*, 466 U. S. 294, 308–310 (1984).

The case law dealing with the application of the prohibition against placing a defendant twice in jeopardy following a mistrial because of a hung jury has its own sources and logic. It has been established for 160 years, since the opinion of Justice Story in *United States* v. *Perez*, 9 Wheat. 579 (1824), that a failure of the jury to agree on a verdict was an instance of "manifest necessity" which permitted a trial judge to termi-

324

nate the first trial and retry the defendant, because "the ends of public justice would otherwise be defeated." *Id.*, at 580. Since that time we have had occasion to examine the application of double jeopardy principles to mistrials granted for reasons other than the inability of the jury to agree, whether the mistrial is granted on the motion of the prosecution, see *Illinois* v. *Somerville*, 410 U. S. 458 (1973), or on the motion of the defendant, see *Oregon* v. *Kennedy*, 456 U. S. 667 (1982); *United States* v. *Dinitz*, 424 U. S. 600 (1976). Nevertheless, we have constantly adhered to the rule that a retrial following a "hung jury" does not violate the Double Jeopardy Clause. *Logan* v. *United States*, 144 U. S. 263, 297–298 (1892). Explaining our reasons for this conclusion in *Arizona* v. *Washington*, 434 U. S. 497 (1978), we said:

> "[W]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Id.*, at 509.

We are entirely unwilling to uproot this settled line of cases by extending the reasoning of *Burks*, which arose out of an appellate finding of insufficiency of evidence to convict following a jury verdict of guilty, to a situation where the jury is unable to agree on a verdict. Thirty-five years ago we said in *Wade* v. *Hunter*, 336 U. S. 684, 688–689 (1949):

> "The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a

jury to agree on a verdict. In such event the purpose of
law to protect society from those guilty of crimes fre-
quently would be frustrated by denying courts power to
put the defendant to trial again. . . . What has been
said is enough to show that a defendant's valued right to
have his trial completed by a particular tribunal must in
some instances be subordinated to the public's interest in
fair trials designed to end in just judgments."

We think that the principles governing our decision in
*Burks*, and the principles governing our decisions in the hung
jury cases, are readily reconciled when we recognize that the
protection of the Double Jeopardy Clause by its terms applies
only if there has been some event, such as an acquittal, which
terminates the original jeopardy. See *Justices of Boston
Municipal Court, supra; Price* v. *Georgia*, 398 U. S. 323, 329
(1970). Since jeopardy attached here when the jury was
sworn, see *United States* v. *Martin Linen Supply Co.*, 430
U. S. 564, 569 (1977), petitioner's argument necessarily as-
sumes that the judicial declaration of a mistrial was an event
which terminated jeopardy in his case and which allowed him
to assert a valid claim of double jeopardy.

But this proposition is irreconcilable with cases such as
*Perez* and *Logan*, and we hold on the authority of these cases
that the failure of the jury to reach a verdict is not an event
which terminates jeopardy. Our holding in *Burks* estab-
lished only that an appellate court's finding of insufficient evi-
dence to convict on appeal from a judgment of conviction is
for double jeopardy purposes, the equivalent of an acquittal;
it obviously did not establish, consistently with cases such as
*Perez*, that a hung jury is the equivalent of an acquittal.[5]
Justice Holmes' aphorism that "a page of history is worth a

---

[5] Of course, a trial court's finding of insufficient evidence also is the
equivalent of an acquittal, see *Hudson* v. *Louisiana*, 450 U. S. 40, 44–45,
n. 5 (1981), but *Burks* was not necessary to establish that principle. See
*Burks* v. *United States*, 437 U. S., at 11, citing *Fong Foo* v. *United States*,
369 U. S. 141 (1962); *Kepner* v. *United States*, 195 U. S. 100 (1904).

326

volume of logic" sensibly applies here, and we reaffirm the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected. The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree. Regardless of the sufficiency of the evidence at petitioner's first trial, he has no valid double jeopardy claim to prevent his retrial.[6]

Accordingly, we reverse the judgment of the Court of Appeals on the question of jurisdiction, and on the merits conclude that the District Court was correct in denying petitioner's motion to bar retrial.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring in part and dissenting in part.

Petitioner was indicted and tried on two counts of distributing a controlled substance. He claims that the prosecution failed to present constitutionally sufficient evidence to sustain its case. The jury, perhaps due to the alleged inadequacy of the evidence, was unable to reach a verdict and was therefore dismissed. As a result of today's decision, petitioner will be tried again on the same indictment before a new jury, notwithstanding the fact that, as we must assume, he

---

[6] It follows logically from our holding today that claims of double jeopardy such as petitioner's are no longer "colorable" double jeopardy claims which may be appealed before final judgment. A colorable claim, of course, presupposes that there is some possible validity to a claim. Cf. *Jones* v. *Barnes*, 463 U. S. 745, 751–752 (1983); *Florida Dept. of State* v. *Treasure Salvors, Inc.*, 458 U. S. 670, 694–695 (1982). Since no set of facts will support the assertion of a claim of double jeopardy like petitioner's in the future, there is no possibility that a defendant's double jeopardy rights will be violated by a new trial, and there is little need to interpose the delay of appellate review before a second trial can begin.

was entitled to acquittal as a matter of law. It seems to me quite clear that he will thereby "be subject for the same offence to be twice put in jeopardy for life or limb." U. S. Const., Amdt. 5. Yet the Court declares that, despite appearances, petitioner's trial did not really end with the dismissal of the jury and that therefore his imminent retrial is not really a new trial at all. In my judgment, common sense and the Double Jeopardy Clause are not so incompatible.

I agree with the Court that petitioner's claim is appealable under 28 U. S. C. § 1291 and that the case therefore turns on whether, if petitioner's sufficiency-of-the-evidence claim is valid, retrial is barred. Relying on cases in which we have held that "retrial following a 'hung jury' does not violate the Double Jeopardy Clause," *ante*, at 324, the Court asserts that "the failure of the jury to reach a verdict is not an event which terminates jeopardy," *ante*, at 325. In so reasoning, the Court, in my view, improperly ignores the realities of the defendant's situation and relies instead on a formalistic concept of "continuing jeopardy." See *Justices of Boston Municipal Court* v. *Lydon*, 466 U. S. 294, 315–316 (1984) (BRENNAN, J., concurring in part and concurring in judgment). Apparently, under the Court's approach, only an actual judgment of acquittal, or an unreversed conviction, would "terminate" jeopardy and thereby bar retrial. Accordingly, a defendant who is constitutionally *entitled to an acquittal* but who fails to receive one—because he happens to be tried before an irrational or lawless factfinder or because his jury cannot agree on a verdict—is worse off than a defendant tried before a factfinder who demands constitutionally sufficient evidence. Indeed, he is worse off than a *guilty* defendant who is acquitted due to mistakes of fact or law. See *Arizona* v. *Rumsey*, 467 U. S. 203, 211 (1984). I do not believe this paradoxical result is faithful to the principle we have repeatedly reaffirmed that the Double Jeopardy Clause "precludes retrial where the State has failed

as a matter of law to prove its case despite a fair opportunity to do so." *Hudson* v. *Louisiana*, 450 U. S. 40, 45, n. 5 (1981). See *Justices of Boston Municipal Court* v. *Lydon*, *supra*, at 314.

Instead, as I explained at greater length in *Lydon*, I believe a common-sense approach to claims of "continuing jeopardy" requires a court to ask, first, whether an initial proceeding at which jeopardy attached has now objectively ended, and, second, whether a new proceeding would violate the Constitution. 466 U. S., at 320–322. In answering the first question, we should look to the fundamental policies of the Double Jeopardy Clause, "namely, its concern that repeated trials may subject a defendant 'to embarrassment, expense and ordeal and compe[l] him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' . . . Jeopardy may be said to have terminated only when the posture of a trial in some objective sense leaves the defendant in such a position that resumption of proceedings would implicate those policies." *Id.*, at 320 (quoting *Green* v. *United States*, 355 U. S. 184, 187–188 (1957)). Employing that analysis, I have little trouble concluding that when a jury, unable to reach a verdict, is dismissed and a mistrial is declared, a defendant's trial has come to an end. An entirely new trial on the same indictment before a new jury, presumably with much of the same evidence, will plainly subject the defendant to the kinds of risks and costs that the Double Jeopardy Clause was intended to prohibit. See *Arizona* v. *Washington*, 434 U. S. 497, 503–504 (1978).[1] I therefore

---

[1] In contrast to a defendant tried in a two-tier system like that at issue in *Justices of Boston Municipal Court* v. *Lydon*, 466 U. S. 294 (1984), a defendant in petitioner's circumstances will approach his trial on the assumption that it will be his only opportunity to influence the factfinder in his favor. That expectation will result in a maximum dedication of the defendant's resources to the initial proceeding, will deprive him of the ability to take strategic advantage of his knowledge that he will have another factfinding opportunity, and will engender in him a significant degree of anxiety during the course of the first trial. Accordingly, in a traditional

conclude that the declaration of a mistrial "terminated" one proceeding against petitioner.[2]

In so concluding, I do not reject the longstanding rule, emphasized by the Court, that, in cases of "manifest necessity," retrial may be permitted despite a mistrial. "The fact that a trial has ended does not . . . complete the constitutional inquiry; the Court has concluded [in several contexts] that strong policy reasons may justify subjecting a defendant to two trials in certain circumstances notwithstanding the literal language of the Double Jeopardy Clause." *Lydon,* 466 U. S., at 308–309. Until the decision in *Lydon,* however, we did not seek to justify such a retrial by pretending that it was not really a new trial at all but was instead simply a "continuation" of the original proceeding. See *ibid.* In *Arizona* v. *Washington, supra,* for example, we reviewed the unusual

---

trial system, an event that ends the first proceeding, such as the declaration of a mistrial, has significance in terms of the policies underlying the Double Jeopardy Clause that it does not have in the two-tier context. Cf. *Lydon, supra,* at 320–321 (BRENNAN, J., concurring in part and concurring in judgment).

[2] By identifying the point at which a trial has terminated, I believe we also determine the point at which a defendant should be able to obtain review of a claim that a new trial is barred. See *Justices of Boston Municipal Court* v. *Lydon, supra,* at 320–321 (BRENNAN, J., concurring in part and concurring in judgment). Such a claim is plainly ripe when the first proceeding has ended and a new one is imminent. As the Court explains, a "colorable" double jeopardy claim "contest[s] the very power of the Government to bring a person to trial, and the right would be significantly impaired if review were deferred until after the trial." *Ante,* at 320. See *Abney* v. *United States,* 431 U. S. 651, 662 (1977).

Indeed, the Court's conclusion in this regard makes its holding on the merits that much more bewildering. In the context of discussing the jurisdictional question, the Court states that "[p]etitioner's first trial had ended and his second trial had been rescheduled before he asserted his double jeopardy claim to bar retrial." *Ante,* at 322. Cf. *post,* at 335–337 (STEVENS, J., dissenting). Yet, on the merits, it rules "that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected." *Ante,* at 326. Apparently, the proceedings petitioner will experience constitute two trials for jurisdictional purposes but only one trial for double jeopardy purposes.

circumstances that might permit retrial after a mistrial order. We did not, however, seek to evade the common-sense fact that such an order "terminates" the first trial. We explained that, "[u]nlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is *terminated* without finally resolving the merits of the charges against the accused." 434 U. S., at 505 (emphasis added). In short, the question whether a trial has ended is distinct from the question whether a new trial is permissible.

In answering the second question, I believe the mistrial cases on which the Court relies so heavily are quite beside the point. It is, of course, true, as the Court explains, that we have long held " 'that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial.' " *Ante*, at 324 (quoting *Arizona* v. *Washington, supra*, at 509). But that proposition demonstrates only that petitioner's new trial is not constitutionally barred simply because the original jury was unable to reach a verdict. Petitioner's objection to the new trial is not, however, based on the fact that his trial ended with a hung jury. Instead, he contends that retrial is prohibited because the prosecution failed to present constitutionally sufficient evidence at the trial. That contention is, in my view, correct under *Burks* v. *United States*, 437 U. S. 1, 15–16 (1978), notwithstanding the fact that, in contrast to the situation in that case, no court has yet declared the evidence insufficient. The fundamental principle underlying *Burks*, and indeed most of our double jeopardy cases, is that the prosecution is entitled to one, and only one, full and fair opportunity to convict the defendant. When the prosecution has failed to present constitutionally sufficient evidence, it cannot complain of unfairness in being denied a second chance, and the interests in finality, shared by the defendant and society, strongly outweigh the reasons for a retrial. See *ibid.;* see also *Arizona* v. *Washington, supra*, at 503–504. These principles are no less applicable in

a case in which the inadequacy of the evidence is not recognized by the trial judge.

Indeed, in *Tibbs* v. *Florida*, 457 U. S. 31 (1982), we explained that, unless a defendant can obtain review of a sufficiency claim prior to retrial, the protections established in *Burks* and its successors would become illusory. In that case, the Court held that state appellate reversal of a conviction as against the weight of the evidence does not bar retrial under *Burks*. In response to the fear expressed by the dissent that state appellate courts could mask reversals for insufficiency by characterizing them as based on the weight of the evidence, the Court explained:

> "We held in *Jackson* [v. *Virginia*, 443 U. S. 307 (1979),] that the Due Process Clause forbids any conviction based on evidence insufficient to persuade a rational factfinder of guilt beyond a reasonable doubt. The Due Process Clause, in other words, sets a lower limit on an appellate court's definition of evidentiary sufficiency. This limit, together with our belief that state appellate judges faithfully honor their obligations to enforce applicable state and federal laws, persuades us that today's ruling will not undermine *Burks*." 457 U. S., at 45 (footnote omitted).

The reasoning of *Tibbs* necessarily presupposes that the Double Jeopardy Clause bars retrial after the prosecution's failure of proof at the first trial—even if that failure of proof is as yet judicially undeclared. If this were not so, the "masking" problem discussed in *Tibbs* would be irrelevant: the state appellate court could remand for retrial without addressing the insufficiency claim and the defendant would never be able to challenge the evidence at the first trial. See also *id.*, at 51 (WHITE, J., dissenting).

In sum, I believe that when a jury has been dismissed because of its inability to reach a verdict, the defendant's trial has ended, in law as in common sense. A defendant

who contends that the evidence at that trial was constitutionally insufficient, and that he was therefore entitled to a judgment of acquittal as a matter of law, plainly has a "colorable" claim that a second trial would violate the Double Jeopardy Clause and the trial judge's denial of the claim is therefore immediately appealable. And, finally, if the reviewing court decides the evidence was in fact inadequate, I believe further proceedings against the defendant for the same offense are barred under the rule in *Burks*. I would therefore remand the case for consideration of petitioner's sufficiency claim on the merits.

JUSTICE STEVENS, dissenting.

The dispositive question of appellate jurisdiction that is presented in this case is whether an order denying a motion for a judgment of acquittal on the ground that the evidence is legally insufficient is appealable as a final judgment.[1] I believe that the order is not appealable; therefore, as a matter of law, not even a colorable double jeopardy question is presented.

I

After the District Court had discharged the jury because it was unable to agree upon a verdict on two counts of the indictment, petitioner filed two separate motions: (1) a motion for a judgment of acquittal on the ground that the evidence was legally insufficient to support a conviction; and (2) a motion to bar retrial on the ground that because he was "entitled to judgments of acquittal on those counts," a second trial would violate the Double Jeopardy Clause. App. 15a. On Friday, September 11, 1981, the District Court entered a written order denying the first motion. *Id.*, at 18a. Petitioner promptly filed a notice of appeal in which he described

---

[1] The Government states the question presented as follows:

"Whether a criminal defendant whose first trial resulted in a hung jury has a right to have the trial court's determination of sufficiency of the evidence at that trial reviewed on appeal before the commencement of the second trial." Brief for United States I.

that order as having "denied motions for judgments of acquittal and by necessary implication double jeop. claim." Record 28. On Monday, September 13, 1981, in a colloquy with petitioner's counsel, the District Court agreed that "the double jeopardy claim [that] hinged on the ruling [on the motion for] Judgment of Acquittal" had been denied implicitly.[2]

Two separate questions of appellate jurisdiction were therefore presented to the Court of Appeals. Judge Wilkey's opinion for the Court of Appeals correctly recognized the separate character of the two questions and correctly answered them both. First, if we separately consider the order denying the motion for a judgment of acquittal, it is perfectly clear that, because the District Court did not reach a final judgment, the motion is not appealable on its face as a "final decision," 28 U. S. C. § 1291, or under the "collateral order" exception to the final-judgment rule established in *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541 (1949).[3]

---

[2] "Mr. Palmer: Yes, Your Honor. Just as a housekeeping matter, the double jeopardy claim, of course, hinged on the ruling of Judgment of Acquittal.

"Having denied the Judgment of Acquittal a fortiori, I assume that you also denied the double jeopardy claim.

"The Court: No question about it.

"Mr. Palmer: So, just as a matter of record, can it also be indicated that, on September 11th, you also sought and did deny the double jeopardy claim also?

"The Court: Yes." App. 20a.

[3] As Judge Wilkey explained:

"To come within the reach of the *Cohen* exception, the decision in question must meet three tests. First, it must fully dispose of the controverted issue; in no sense may it 'leave the matter "open, unfinished or inconclusive."' Second, it must not be 'simply a "step toward final disposition of the merits of the case"'; it must resolve 'an issue completely collateral to the cause of action asserted.' Finally, the decision must involve 'an important right which would be "lost, probably irreparably,"' if review awaited final judgment.

"We have little difficulty in applying this test to the district court's ruling on Richardson's insufficiency claim. That ruling fails to meet the second

334

Second, it is equally clear that unless petitioner was entitled to have his first motion granted, there was no basis in law for his dependent double jeopardy motion. Indeed, as petitioner recognized in his notice of appeal and in his colloquy with the District Court, the double jeopardy argument is entirely contingent on the validity of his first motion—the second "hinged" on the first; the denial of the first implicitly rejected the second. Because the order denying the principal motion is not appealable, it is difficult for me to understand how the Court can conclude that the order implicitly denying the dependent motion can either be appealable in its own right, or can convert the otherwise nonappealable, nonfinal order into an appealable order.

Plainly there can be no substance or "color" to a double jeopardy claim that does not identify some order terminating

and third requirements of *Cohen*. As two other circuits have noted, the legal sufficiency of the evidence presented is 'a completely non-collateral issue.' This is because the ultimate question in a criminal trial is whether the defendant is guilty of the crime charged. A defendant who chooses to go to trial is not guilty unless the prosecution is able to prove beyond a reasonable doubt that the defendant committed the crime. If the evidence presented at the first trial was legally insufficient, Richardson is automatically not guilty. Thus, the sufficiency of the evidence is anything but collateral to the merits of the upcoming trial (*i. e.*, the question of defendant's guilt, for this is *determined by* the sufficiency of the evidence); rather, it is a 'step toward final disposition of the merits of the case [which will] be merged in the final judgment,' the type of issue which is *not* covered by the collateral order exception.

"Further, the right to appellate review of the issue will not necessarily be lost if we refuse review at this time. Three circuits have held that a criminal defendant can challenge the sufficiency of the evidence presented at his first trial (which resulted in a hung jury) when appealing his conviction at the second trial. Indeed, in the present case the government concedes that Richardson's insufficiency claim will not be lost if it is not reviewed at this time, noting that 'in the event he is convicted, [Richardson] can raise [the insufficiency claim] on appeal from that conviction.' Therefore, because the insufficiency claim does not meet either the second or third *Cohen* requirements, we cannot review that claim until after a final judgment is entered." 226 U. S. App. D. C. 342, 344, 702 F. 2d 1079, 1081 (1983) (footnotes omitted).

a first jeopardy as constituting a bar to a second trial. As long as the claim rested entirely on an asserted "entitlement" to such an order, the claim can be no stronger than the right to that order. If petitioner had obtained a favorable ruling on his motion for acquittal, a second trial would, of course, be barred. Without that ruling, however, there is not even an arguable basis for a double jeopardy claim.

## II

The Court states that "petitioner's argument necessarily assumes that the judicial declaration of a mistrial was an event which terminated jeopardy in his case and which allowed him to assert a valid claim of double jeopardy." *Ante*, at 325. That is not the way I read the record. Rather, petitioner argues that because the evidence was insufficient, he was "entitled" to have his jeopardy terminated by an order granting his motion for a judgment of acquittal. Until such an order was entered, in view of the fact that he did not argue that the mistrial order itself constituted a termination of jeopardy, his jeopardy would continue.

The appealability issue would be different *if* the petitioner were claiming that the order declaring a mistrial was itself a bar to a second trial. If, for example, the jury had deliberated for only a few minutes and the prosecutor, fearful of an adverse verdict, had persuaded the trial judge to discharge the jury before it could fairly be said that they were deadlocked—in other words, when there was no "manifest necessity," see *Arizona* v. *Washington*, 434 U. S. 497, 505–508 (1978)—the defendant might then argue that the mistrial order was itself tantamount to an acquittal that terminated the first jeopardy. This is not, however, such a case because petitioner does not challenge the order declaring a mistrial and he has no other order to which he can point as constituting a bar to a second trial.

## III

Although I recognize the precedential authority of *Abney* v. *United States*, 431 U. S. 651 (1977), I do not believe that

case acts as a vacuum cleaner of appealability for every claim couched as a double jeopardy violation. In *Abney*, the Court carefully noted that "it is true that a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds lacks the finality traditionally considered indispensable to appellate review," *id.*, at 659, but that such orders fell within the *Cohen* collateral-order exception to the final-judgment rule. 431 U. S., at 659. To begin with, I have already noted that the denial of a motion for a judgment of acquittal based on insufficient evidence cannot separately survive the *Cohen* analysis. More important, I believe that the Court's discussion of *Cohen*'s collateral-issue prong in *Abney* supports the view that *Abney* was not intended to reach a situation such as that before us today. The Court stated:

> "Moreover, the very nature of a double jeopardy claim is such that it is collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i. e.*, whether or not the accused is guilty of the offense charged. In arguing that the Double Jeopardy Clause of the Fifth Amendment bars his prosecution, the defendant makes no challenge whatsoever to the merits of the charge against him. Nor does he seek suppression of evidence which the Government plans to use in obtaining a conviction. Rather, he is contesting the very authority of the Government to hale him into court to face trial on the charge against him. The elements of that claim are completely independent of his guilt or innocence. . . . Thus, the matters embraced in the trial court's pretrial order here are truly collateral to the criminal prosecution itself in the sense that they will not 'affect, or . . . be affected by, decision of the merits of this case.'" 431 U. S., at 659–660 (quoting *Cohen*, 337 U. S., at 546) (citations omitted).

Although the Court began with a broad general reference to "a double jeopardy claim," its specific discussion of the particular double jeopardy claim involved highlights differences

between it and the one here. Here, the petitioner *is* challenging the merits of the charge against him; the elements of his insufficient-evidence claim *are not* completely independent of his guilt or innocence; the matters embraced within the trial court's order *will* affect the decision of the merits of the case. Thus, although broadly written, *Abney* is not broad enough to support the conclusion "that petitioner has raised a colorable double jeopardy claim appealable under 28 U. S. C. § 1291." *Ante,* at 322.

Because the essence of petitioner's claim is that he should be relieved of any additional jeopardy as soon as he is entitled to the entry of a judgment of acquittal, there is no more reason to allow immediate appellate review in this case than in one in which the defendant tried to appeal from an order denying a motion for judgment of acquittal at the close of the prosecution's case. As I recently noted in a similar context, the availability of premature review would give defendants "every incentive . . . not only to delay eventual punishment, but to obtain leverage in plea negotiations." *Justices of Boston Municipal Court* v. *Lydon,* 466 U. S. 294, 334–335 (1984). Moreover, "[t]he speed and efficiency of the process would quickly be eroded if [interlocutory appeals] intervened between the first and second trials." *Ibid.* "[U]ndue litigiousness and leaden-footed administration of justice [is] particularly damaging to the conduct of criminal cases." *DiBella* v. *United States,* 369 U. S. 121, 124 (1962); see also *Cobbledick* v. *United States,* 309 U. S. 323, 325 (1940). Further, while it is true that the postponement of appellate review, see n. 3, *supra,* will cause some hardship because defendants will have to proceed through second trials before having their claims reviewed, as Judge Wilkey correctly observed,[4] that hardship is far less grievous than the Court's conclusion that such claims may never be reviewed. See *ante,* at 323, 326.

---

[4] 226 U. S. App. D. C., at 346–347, and n. 30, 702 F. 2d, at 1083–1084, and n. 30.

In sum, I would affirm the judgment of the Court of Appeals. It correctly held that the order denying the motion for judgment of acquittal was not appealable. Because petitioner's entire appeal constituted an attack on that order, it was properly dismissed. Accordingly, I respectfully dissent.