866 F.2d 431
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert THOMPSON, Petitioner-Appellant,
v.
Dale FOLTZ, Respondent-Appellee.
 No. 87-1415.
 United States Court of Appeals, Sixth Circuit.
 Jan. 18, 1989.
 
 Before MERRITT, BOYCE F. MARTIN, Jr., NATHANIEL R. JONES, Circuit Judges.
 PER CURIAM.
 
 
 1
 The petitioner appeals from the district court's order denying his petition for a writ of habeas corpus filed under 28 U.S.C. Sec. 2254 (1982). Because we are unable to determine, based on the record before us, whether the State notified petitioner's trial counsel of the existence of certain exculpatory evidence, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 The petitioner-appellant, Robert Thompson ("Thompson"), has been tried three times in the Saginaw (Michigan) Circuit Court for allegedly committing a murder during an armed robbery which occurred in September of 1974. Prior to Thompson's indictment for the murder, the State granted immunity to his alleged accomplice in the robbery, Robert Smith ("Smith"), in exchange for Smith's testimony against Thompson. In February of 1975, at the preliminary examination hearing, Smith testified to witnessing Thompson commit the murder; however, because Smith could not be located at the time of Thompson's first trial in August of 1975, the State introduced Smith's preliminary examination testimony into evidence. The jury subsequently returned a guilty verdict against Thompson for first-degree felony murder.
 
 
 3
 Thompson challenged his conviction before the Michigan Court of Appeals which reversed the jury's verdict because of improper jury instructions and remanded for a new trial. People v. Robert G. Thompson, 81 Mich.App. 348, 265 N.W.2d 632 (1978), aff'd People v. Aaron, 409 Mich. 672, 299 N.W.2d 304 (1980). Although Smith was in the custody of the Michigan authorities at the time of the second trial, he stated prior to that trial that he would not testify in accordance with his testimony at the preliminary examination, and advised the State not to call him as a witness. The State therefore presented its case against Thompson without putting Smith on the stand. Although Thompson twice moved for a judgment of acquittal at this trial based upon the State's alleged failure to present sufficient evidence to support a conviction, the trial judge denied both motions and sent the case to the jury. However, when the jury was unable to reach a verdict, the trial judge declared a mistrial.
 
 
 4
 Following the second trial, the State sought to revoke Smith's immunity and to have him held in contempt of court for failing to testify at either of the first two trials. In June of 1981, the trial court denied the State's petition to revoke Smith's immunity and held that the proper remedy for Smith's conduct under Michigan law was contempt of court. The State and Smith subsequently entered into an agreement which provided that Smith would acquiesce in the contempt proceedings in exchange for the State not appealing the trial court's immunity revocation ruling. Thompson's counsel was not present during any of the proceedings or meetings concerning Smith's failure to testify.
 
 
 5
 In October of 1981, Thompson was tried for the third time. At this trial, Smith again testified that he witnessed Thompson commit the murder during the robbery. The jury returned a verdict of guilty on October 8, 1981, and Thompson was sentenced to a term of life imprisonment. The Michigan Court of Appeals subsequently affirmed the jury's verdict.
 
 
 6
 In a split decision, the Michigan Supreme Court also affirmed Thompson's conviction. People v. Thompson, 424 Mich. 118, 379 N.W.2d 49 (1985). Relying on Richardson v. United States, 468 U.S. 317 (1984), the majority held, inter alia, that Thompson was not subjected to double jeopardy by being tried for a third time after the second trial resulted in a mistrial. Also relying on Richardson, the majority further held that Thompson was not entitled to appellate review of his claim based on the sufficiency of the evidence at his mistrial under the Due Process Clause of the Fourteenth Amendment or under the due process provisions of the Michigan Constitution. The three dissenting justices disagreed with the majority's conclusion as to Thompson's Michigan due process claim, asserting that he was constitutionally entitled to appellate review, after the third trial, of the sufficiency of the evidence at the mistrial.
 
 
 7
 Having exhausted his state remedies, Thompson (then incarcerated) filed the instant petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254 (1982). In his petition, Thompson again argued that the third trial subjected him to double jeopardy and that the trial court erred in denying his motions for judgment of acquittal at the second trial. Thompson further argued that his due process rights were violated by (1) Smith's being called to testify at the third trial when he had been available to testify at the second trial; (2) the State's attempt to revoke Smith's immunity; and (3) the State's alleged failure to disclose to defense counsel the attempted revocation of Smith's immunity and contempt proceedings against him.
 
 
 8
 On April 6, 1987, the district court denied Thompson's habeas petition, holding that Richardson v. United States, supra, foreclosed both his double jeopardy and due process claims. In addition, the district court ruled (1) that Smith's testimony at the third trial did not deprive Thompson of due process; (2) that the State did not coerce Smith into testifying against Thompson; and (3) that the State did not fail to disclose exculpatory evidence to defense counsel under the doctrine set forth in Brady v. Maryland, 373 U.S. 83 (1963). Thompson challenges each of these rulings on appeal.
 
 II.
 
 9
 At the outset, we are confronted with a jurisdictional challenge in this case. The State argues that the motion for "rehearing" which Thompson filed contemporaneously with his notice of appeal in the district court constituted a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e). The State argues that Thompson's notice of appeal therefore was not effective and that he was required under Fed.R.App. 4(a)(4) to submit another notice of appeal after the district court disposed of his motion. Since Thompson admittedly did not file a second notice of appeal, the State contends that this court has no jurisdiction over this case.
 
 
 10
 Thompson's motion for rehearing requested the district court to address certain arguments which were raised in the habeas petition but which allegedly were not addressed in the district court's memorandum opinion. Because Thompson's motion was not styled as a Rule 59(e) motion, and because it did not explicitly ask the court to alter or amend the judgment, we construe the motion as one filed under Fed.R.Civ.P. 60(b) rather than Rule 59(e). Therefore, since Thompson's notice of appeal was unaffected by his filing of the motion for rehearing, this court has jurisdiction over this case.
 
 III.
 
 11
 Turning to the merits, we find that the district court correctly held that Thompson's double jeopardy challenge is foreclosed by the Supreme Court's decision in Richardson v. United States, 468 U.S. 317 (1984). In Richardson, the Court held that a mistrial resulting from a hung jury did not terminate the defendant's original jeopardy so as to preclude him from being retried under the Double Jeopardy Clause. As in the instant case, the defendant in Richardson argued that because the evidence presented against him at the first trial was legally insufficient to support a guilty verdict, the State was precluded from retrying him after the mistrial was declared. The Supreme Court, however, rejected this argument, stating that "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected." Id. at 325. Therefore, the court reasoned, "[r]egardless of the sufficiency of the evidence at petitioner's first trial, he has no valid double jeopardy claim to prevent his retrial." Id. at 326.
 
 
 12
 Richardson is procedurally distinguishable from the instant case because that case came to the court of appeals as an interlocutory matter. However, we find this distinction to be irrelevant because the basic holding of Richardson--that a hung jury mistrial does not terminate the defendant's original jeopardy--is not limited to interlocutory double jeopardy challenges. Therefore, we are bound by Richardson to hold that the State did not subject Thompson double jeopardy by forcing him to stand trial for a third time.
 
 IV.
 
 13
 Thompson next contends that the failure of the trial court to direct a judgment of acquittal in the second trial violated his rights under the Due Process Clause of the Fourteenth Amendment. While Thompson does not ask this court to review the sufficiency of the State's evidence at the second trial, he argues that the Michigan appellate courts were required to review this evidence when he appealed from the judgment of conviction in the third trial. We disagree.
 
 
 14
 It is settled law that the Due Process Clause requires that a state conviction be supported by sufficient evidence to lead a rational trier of fact to find guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979). However, no cases have been cited which hold that the Due Process Clause requires that a valid conviction be overturned because the State presented insufficient evidence at an earlier mistrial. To the contrary, the decisions addressing this issue held that the Due Process Clause does not require state or federal review of the trial court's action under these circumstances. See, e.g., United States v. Kimberlin, 805 F.2d 210, 220 (7th Cir.1986), cert. denied, 107 S.Ct. 3270 (1987); United States v. Brack, 747 F.2d 1142, 1148 (7th Cir.1984), cert. denied, 469 U.S. 1216 (1985); United States v. Gulledge, 739 F.2d 582, 584 (11th Cir.1984).
 
 
 15
 Given that the Supreme Court's decision in Jackson pertains only to convictions obtained on the basis of legally insufficient evidence, and given the interpretations of Jackson and Richardson in the above-cited circuit court decisions, we find that Thompson was not entitled under the Due Process Clause to state appellate review of the trial court's denial of his motions for acquittal at the mistrial.
 
 V.
 
 16
 Thompson next contends that the State violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose to defense counsel the immunity revocation and contempt proceedings against Smith. Because we are unable to determine, based on the record before us, whether Thompson's counsel was aware of these matters, we remand for further proceedings as to this issue.
 
 
 17
 In Brady and its progeny, the Supreme Court has made clear that it is a violation of due process for the State to suppress material evidence which is favorable to the accused, when defense counsel has timely requested that such evidence be produced. Evidence which may be used to impeach a prosecution witness falls within the scope of the Brady rule and therefore must be disclosed upon defense counsel's request. Giglio v. United States, 405 U.S. 150 (1972). However, in order for the nondisclosure of such evidence to violate the Due Process Clause under the Brady doctrine, the evidence must possess sufficient probative value to create a reasonable doubt in the mind of a rational juror which would not otherwise have existed. United States v. Agurs, 427 U.S. 97, 112 (1976). See also United States v. Bagley, 473 U.S. 667, 674-78 (1985).
 
 
 18
 The State does not argue that Thompson's counsel failed to request transcripts of the immunity revocation and contempt proceedings, and the record indicates that a general request for these materials was made. J.App. at 37, 115-20. Moreover, since Smith was the State's key witness against Thompson and since the State failed to obtain a conviction without Smith's testimony, the allegedly undisclosed evidence constitutes material, exculpatory information under Brady and Agurs. Therefore, our resolution of Thompson's Brady challenge turns on whether defense counsel was aware, prior to the third trial, that these proceedings had taken place.
 
 
 19
 The district court found that defense counsel was aware of the initial immunity agreement, and further found that "[t]here is no indication that defense counsel was unaware that the prosecution once sought to have immunity revoked or that Smith was held in contempt." J.App. at 24. However, the district court did not find that defense counsel actually was aware of the immunity revocation and contempt proceedings against Smith. Since we are unable to determine from the record before us whether defense counsel did, in fact, know about these proceedings at the time of the third trial, we remand to the district court with instructions for the court to hold a hearing to answer this question.
 
 VI.
 
 20
 We have considered Thompson's remaining challenges and find them to be without merit for the reasons stated in the district court's opinion. Therefore, for the above-stated reasons, the district court's judgment is hereby VACATED and the case is REMANDED for further consideration of Thompson's Brady challenge.