[Cite as *In re M.M.*, 2015-Ohio-3485.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: M.M. | : | APPEAL NOS. C-140628 |
|  |  | C-140629 |
|  | : | C-140630 |
|  |  | C-140631 |
|  | : | TRIAL NOS. 12-11769X |
|  |  | 14-5993X |
|  | : | 14-5994X |
|  |  | 14-6564X |
|  | : |  |
|  |  | *O P I N I O N.* |
|  | : |  |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: August 28, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Gordon C. Magella*, Assistant Public Defender, for Appellant M.M.

Please note: this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    M.M. was adjudicated delinquent for carrying a concealed weapon ("CCW"), resisting arrest and obstructing official business.  He advances the following arguments on appeal:  (1) the juvenile court erred when it denied his motion to suppress evidence stemming from the unlawful stop of the car in which he was a passenger; (2) the adjudications were not based on sufficient evidence; and (3) the adjudication for carrying a concealed weapon was barred by the Double Jeopardy Clauses of the United States and Ohio Constitutions.  We affirm the judgments of the court.

## I.  Background

{¶2}    Police officers Evelyn Colonel and Joseph Horner initiated a stop of a car with a cracked windshield.  When the car stopped, the backseat passenger, later identified as M.M., exited the car.  Officer Colonel ordered him to return to the car, and he complied.  Officer Horner asked the driver to roll down the car's windows.  When he did so, M.M. shifted in the back, and Officer Colonel saw the handle of a gun tucked into M.M.'s pants.  She shouted, "Gun!" and drew her weapon.  M.M. then jumped out of the car and ran away.  Officer Horner gave chase.  As he ran after M.M., Officer Horner saw something drop from M.M.'s waistband and heard it hit the pavement.

{¶3}    Police officer Chris Bihl joined the pursuit in response to a radio report.  He saw a person matching the description enter an apartment building.  He followed him into the apartment and ordered him to put his hands behind his back.  But as Officer Bihl put his hands on the youth to handcuff him, M.M. broke away and ran again. Another police officer was able to stop and cuff him.

{¶4}    Police officer Ronald Kullgren also responded to the radio call.  At the location of the stop, he found a gun about three feet from the passenger-side door of the

car. He secured the gun. Officer Horner later attempted to test fire the gun and found it to be inoperable.

{¶5}    M.M. was charged with CCW, resisting arrest and obstructing official business. He filed a motion to suppress the evidence stemming from the stop of the car. Following a hearing, the magistrate denied the motion. A trial was held. At the conclusion of the trial, the magistrate adjudicated M.M. delinquent for resisting arrest and obstructing official business, but held his decision on the CCW charge in abeyance so that he could research whether an inoperable firearm satisfied the elements of the charge. He later issued a decision dismissing the CCW charge, concluding that because the gun was inoperable, it could not be a deadly weapon under R.C. 2923.12.

{¶6}    M.M. filed objections to the magistrate's decisions adjudicating him delinquent for resisting arrest and obstructing official business. The state objected to the magistrate's decision dismissing the CCW complaint. The trial court reviewed the record, adopted the magistrate's decisions with respect to resisting arrest and obstructing official business, and reversed the magistrate's decision that dismissed the CCW complaint. M.M. was adjudicated delinquent for all three charges.

## II. Reasonable Suspicion to Stop for a Cracked Windshield

{¶7}    In his first assignment of error, M.M. asserts that the court erred when it denied his motion to suppress. He contends that the police officers did not have reasonable suspicion to stop the car based solely on the car's cracked windshield.

{¶8}    To perform a lawful stop, a police officer must have reasonable suspicion that criminal behavior has occurred or is imminent. *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether reasonable suspicion exists is based on the totality of circumstances "viewed through the eyes of the reasonable and prudent police

officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶9}     During the suppression hearing, both Officer Colonel and Officer Horner testified that the only reason they stopped the car was because it had a cracked windshield in violation of R.C. 4513.02(A).  That provision makes it a crime "to drive or move, or cause or knowingly permit to be driven or moved, on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person." A cracked windshield can result in a violation of R.C. 4513.02(A)—and thus serve as justification for stopping a car—only if it renders the car "in such an unsafe condition as to endanger any person."  *See State v. Latham*, 2d Dist. Montgomery No. 20302, 2004-Ohio-2314, ¶ 19.  M.M. argues that was not the case here.

{¶10}     M.M. maintains that the stop in this case is similar to that in *State v. McWhorter*, 11th Dist. Cuyahoga No. 95108, 2011-Ohio-1074, a case in which the appellate court affirmed the trial court's grant of a motion to suppress following a stop for a cracked windshield.  In that case, the trial court concluded that the stop of a car for a cracked windshield was not reasonable because "the cracked windshield 'as described by the police officer' did not constitute 'an unsafe vehicle that would be such an unsafe condition to endanger any person or property.' "  *Id.* at ¶ 6.  The Eleventh District affirmed, concluding that the trial court was in the better position to determine whether the officer's description of the unsafe condition was credible, especially in light of the lack of other evidence.  *Id.* at ¶ 17.

{¶11}     But in this case, the trial court found the officers' testimony to be credible.  Both Officer Colonel and Officer Horner testified that the crack made the car unsafe.  Officer Colonel articulated her suspicion as follows:

It's against the law in the state of Ohio to have a cracked or blurred windshield. * * * To obscure the driver's vision. * * * It was close to where the driver's eyesight would have been, and you could get a glare or something. If he was in an accident, I don't know you know, if he was on a head-on accident, I don't know how that glass would shatter on the passengers in the vehicle.

And Officer Horner echoed her concerns:

Well, it was a pretty good crack. And the only way I would pull it over if it was in the driver view. So it was also in the driver view. I believe it went from the driver all the way across.

Officer Horner also testified that the crack was big enough for him to see through the rear window of the car and that "[i]t was more than just a simple crack."

{¶12} Here, unlike the case cited by M.M., the magistrate found credible the officers' testimony that the crack made the car unsafe. Furthermore, the officers set forth an objectively reasonable basis for their belief that the windshield presented a safety concern. We conclude that the court's findings were supported by competent credible evidence. *See State v. Burnside*, 100 Ohio St.3d 152, 155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The first assignment of error is overruled.

### III. Carrying a Concealed Weapon

{¶13} M.M.'s second assignment of error asserts that his adjudication for CCW was based on insufficient evidence. He argues that he could not be found guilty of carrying a concealed weapon because the gun was determined to be inoperable, and that the state did not present sufficient evidence that the gun was concealed.

{¶14} M.M. was charged with "knowingly carry[ing] or hav[ing], concealed on [his person] * * * [a] deadly weapon other than a handgun." R.C. 2923.12(A). To be a

5

deadly weapon, the gun must be (1) "capable of inflicting death" and (2) either "designed or specially adapted for use as a weapon" or "possessed, carried, or used as a weapon." R.C. 2923.11(A). As to the first element, Officer Colonel testified that the weight of the gun was such that it could be used as a bludgeon to inflict death. There was no question that the second element was met: the gun was designed as a weapon.

{¶15} Despite the evidence presented at trial, M.M. urges us to follow the lead of the Second Appellate District, which requires that an inoperable gun be in fact used as a bludgeon in order for it to be considered a "deadly weapon." *See State v. Macias*, 2d Dist. Drake No. 1562, 2003-Ohio-1565, ¶ 37. But we decline to read an additional requirement into the plain language of the statute. *See In re J.T.*, 1st Dist. Hamilton No. C-130434 (Feb. 7, 2014), *appeal accepted*, 139 Ohio St.3d 1416, 2014-Ohio-2487, 10 N.E.3d 737. Here, the state presented sufficient evidence that the gun was a deadly weapon as defined in R.C. 2923.11(A).

{¶16} M.M. also argues that the state did not put forth sufficient evidence that the gun was concealed because Officer Colonel testified that when the windows of the car were rolled down, she could easily see the handle of the gun in M.M.'s waistband. A gun is concealed if it is "so situated not to be discernible by ordinary observation by those near enough to see it if it were not concealed[.]" *State v. Davis*, 15 Ohio App.3d 64, 64-65, 472 N.E.2d 751 (1st Dist.1984), quoting *State v. Pettit*, 20 Ohio App.2d 170, 173-174, 252 N.E.2d 325 (4th Dist.1969). Even a partially concealed gun can be found to be "concealed" under R.C. 2923.12. *State v. Almalik*, 41 Ohio App.3d 101, 534 N.E.2d 898 (8th Dist.1987) (butt of gun visible from under seat after defendant exited car). Here, the testimony was that Officer Colonel did not see the gun when M.M. exited the car the first time. Rather, only after the windows in the car were unrolled, as M.M. "was still readjusting himself," did Officer Colonel

6

see the handle. The state adduced substantial, credible evidence from which the trier of fact could have reasonably concluded that the state had proved beyond a reasonable doubt the elements of CCW. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The second assignment of error is overruled.

### IV. The CCW Adjudication was Not Barred by Double Jeopardy

{¶17} In his third assignment of error, M.M. asserts that his delinquency adjudication for CCW was barred by the Double Jeopardy Clauses of the Ohio and United States Constitutions. "[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson v. U.S.*, 468 U.S. 317, 325, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). M.M. contends that this event happened when the trial court signed off on the magistrate's decision. We are not persuaded.

{¶18} A review of the rule governing proceedings before magistrates is instructive. Under Juv.R. 40(D)(3)(b)(i), a party can file an objection to a magistrate's decision within 14 days of the filing of the decision. The trial court may enter judgment on a magistrate's decision within that 14-day period or after its expiration. Juv.R. 40(D)(4)(e)(i). But if the court enters a judgment and a party later files objections, "the timely filing of objections to the magistrate's decision shall operate as an automatic stay of execution of the judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered." *Id.* When objections are filed, the court "shall undertake an independent review as to the objected matters[.]" Juv.R. 40(D)(4)(d). That is what happened here. The magistrate's decision was entered on September 10, 2014, and signed by

the trial court. The state filed its objections the next day, staying the judgment of the court.

{¶19} The Second Appellate District considered the effect of a trial court's adoption of a magistrate's delinquency adjudication prior to objections being filed and concluded that jeopardy did not attach. *In re C.B.*, 2d Dist. Montgomery No. 23615, 2010-Ohio-2129, ¶ 41. The court explained that a trial court's adoption of a magistrate's decision within the 14-day period for objections

> is preliminary or tentative in nature, and it cannot be allowed to replace or negate the trial court judge's de novo review mandated by Juv.R. 40(D)(4). In fact, by acknowledging the right of either party to object, the court puts the parties on notice that the finality of the order is dependent upon the trial court's de novo review of any timely objections, as required by the Juvenile Rules.

*Id.* at ¶ 38.

{¶20} M.M. points to two cases decided years earlier that had reached the opposite conclusion. *See In re Phommarath*, 10th Dist. Franklin No. 95APF05-539, 1995 Ohio App. LEXIS 5089 (Nov. 14, 1995); *In re Donald Joseph M.*, 6th Dist. Sandusky No. S-98-058, 1999 Ohio App. LEXIS 4316 (Sept. 17, 1999). These cases are at least arguably distinguishable because they were decided under prior versions of Juv.R. 40. Regardless, we find the Second Appellate District's logic in *C.B.* to be persuasive and consistent with the current version of the rule.

{¶21} Here, as in *C.B.*, the court's initial adoption of the magistrate's decision was tentative. The state's timely objection stayed the judgment dismissing the CCW charge for the court's independent review. Jeopardy did not attach until

after the court issued its decision following the requisite independent review. The third assignment of error is overruled

## V. There was Sufficient Evidence of Obstructing and Resisting Arrest

{¶22} We consider the final assignments of error together. In the fourth, M.M. asserts that the state did not present sufficient evidence of obstruction of official business, and in the fifth, he asserts that the state did not present sufficient evidence of resisting arrest. The gist of both assignments is that M.M. could not be delinquent for obstructing or resisting if the initial stop of the car was unlawful. But we have concluded that the stop was lawful. Our review of the record reveals that the state adduced substantial, credible evidence from which the court could have reasonably concluded that the state had proved beyond a reasonable doubt the elements of obstructing official business and resisting arrest. *See Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The fourth and fifth assignments of error are overruled.

{¶23} We therefore affirm the judgments of the juvenile court.

Judgments affirmed.

**CUNNINGHAM, P.J.,** and **STAUTBERG, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.