Justice Scalia,
with whom Justice Thomas and Justice Alito join, dissenting.
The Double Jeopardy Clause of the Fifth Amendment provides that no person shall “be subject for the same offence to be twice put in jeopardy of life or limb.” The Court today holds that this proscription, as interpreted in Ashe v. Swenson, 397 U. S. 436 (1970), sometimes bars retrial of hung counts if the jury acquits on factually related counts. Because that result neither accords with the original meaning *128 of the Double Jeopardy Clause nor is required by the Court’s precedents, I dissent.
I
Today’s opinion begins with the proclamation that this Court has “found more guidance in the common-law ancestry of the [Double Jeopardy] Clause than its brief text.” Ante, at 117. Would that it were so. This case would be easy indeed if our cases had adhered to the Clause’s original meaning. The English common-law pleas of auterfoits acquit and auterfoits convict, on which the Clause was based, barred only repeated “prosecution for the same identical act and crime.” 4 W. Blackstone, Commentaries on the Laws of England 330 (1769) (emphasis added). See also Grady v. Corbin, 495 U. S. 508, 530-535 (1990) (Scalia, J., dissenting). As described by Sir Matthew Hale, “a man acquitted for stealing [a] horse” could be later “arraigned and convict[ed] for stealing the saddle, tho both were done at the same time.” 2 Pleas of the Crown 246 (1736). Under the common-law pleas, the jury’s acquittal of Yeager on the fraud counts would have posed no bar to further prosecution for the distinct crimes of insider trading and money laundering.
But that is water over the dam. In Ashe, the Court departed from the original meaning of the Double Jeopardy Clause, holding that it precludes successive prosecutions on distinct crimes when facts essential to conviction of the second crime have necessarily been resolved in the defendant’s favor by a verdict of acquittal of the first crime. 397 U. S., at 445-446.[1] Even if I am to adhere to Ashe on stare decisis *129 grounds, cf. Grady, supra, at 528 (Scalia, J., dissenting), today’s holding is an illogical extension of that case. Ashe held only that the Clause sometimes bars successive prosecution of facts found during “a prior proceeding.” 397 U. S., at 444. But today the Court bars retrial on hung counts after what was not, under this Court’s theory of “continuing jeopardy,” Justices of Boston Municipal Court v. Lydon, 466 U. S. 294, 308 (1984), a prior proceeding but simply an earlier stage of the same proceeding.
As a historical matter, the common-law pleas could be invoked only once “there ha[d] been a conviction or an acquittal — after a complete trial.” Crist v. Bretz, 437 U. S. 28, 33 (1978). This Court has extended the protections of the Double Jeopardy Clause by holding that jeopardy attaches earlier: at the time a jury is empanelled and sworn. Id., at 38. Although one might think that this early attachment would mean that any second trial with a new jury would constitute a second jeopardy, the Court amended its innovation by holding that discharge of a deadlocked jury does not “terminat[e] the original jeopardy,” Richardson v. United States, 468 U. S. 317, 325 (1984). Under this continuing-jeopardy principle, retrial after a jury has failed to reach a verdict is not a new trial but part of the same proceeding.[2]
*130 Today’s holding is inconsistent with this principle. It interprets the Double Jeopardy Clause, for the first time, to have effect internally within a single prosecution, even though the “ ‘criminal proceedings against [the] accused have not run their full course.’” Lydon, supra, at 308 (quoting Price v. Georgia, 398 U. S. 323, 326 (1970)). As a conceptual matter, it makes no sense to say that events occurring within a single prosecution can cause an accused to be “twice put in jeopardy.” U. S. Const., Amdt. 5. And our cases, until today, have acknowledged that. Ever since Dunn v. United States, 284 U. S. 390, 393 (1932), we have refused to set aside convictions that were inconsistent with acquittals in the same trial; and we made clear in United States v. Powell, 469 U. S. 57, 64-65 (1984), that Ashe does not mandate a different result. There is no reason to treat perceived inconsistencies between hung counts and acquittals any differently.
Richardson accentuates the point. Under our cases, if an appellate court reverses a conviction for lack of constitutionally sufficient evidence, that determination constitutes an acquittal which, under the Double Jeopardy Clause, precludes further prosecution. Burks v. United States, 437 U. S. 1, 11 (1978). In Richardson, the defendant sought to prevent retrial after a jury failed to reach a verdict, claiming that the case should not have gone to the jury because the Government failed to present sufficient evidence. 468 U. S., at 322-323. The Court held that the Double Jeopardy Clause was inapplicable because there had not been an “event, such as an acquittal, which terminate^] the original jeopardy.” Id., at 325. I do not see why the Double Jeopardy Clause effect of a jury acquittal on a different count should be any different from the Double Jeopardy Clause effect of the prosecution’s failure to present a case sufficient to go to the jury on the same count. In both cases, the predicate necessary for Double Jeopardy Clause preclusion of a new prosecution exists: in the former, the factual findings implicit in the jury’s verdict of acquittal, in the latter, the State’s presentation of *131 a case so weak that it would have demanded a jury verdict of acquittal. In both cases, it seems to me, the Double Jeopardy Clause cannot be invoked because the jeopardy with respect to the retried count has not terminated.
The acquittals here did not, as the majority argues, “unquestionably terminat[e] [Yeager’s] jeopardy with respect to the issues finally decided” in those counts. Ante, at 119 (emphasis added). Jeopardy is commenced and terminated charge by charge, not issue by issue. And if the prosecution’s failure to present sufficient evidence at a first trial cannot prevent retrial on a hung count because the retrial is considered part of the same proceeding, then there is no basis for invoking Ashe to prevent retrial in the present case. If a conviction can stand with a contradictory acquittal when both are pronounced at the same trial, there is no reason why an acquittal should prevent the State from pressing for a contradictory conviction in the continuation of the prosecution on the hung counts.
II
The Court’s extension of Ashe to these circumstances cannot even be justified based on the rationales underlying that holding. Invoking issue preclusion to bar seriatim prosecutions has the salutary effect of preventing the Government from circumventing acquittals by forcing defendants “to ‘run the gantlet’ a second time” on effectively the same charges. 397 U. S., at 446. In cases where the prosecution merely seeks to get “one full and fair opportunity to convict” on all charges brought in an initial indictment, Ohio v. Johnson, 467 U. S. 493, 502 (1984), there is no risk of such gamesmanship. We have said that “where the State has made no effort to prosecute the charges seriatim, the considerations of double jeopardy protection implicit in the application of collateral estoppel are inapplicable.” Id., at 500, n. 9.
Moreover, barring retrial when a jury acquits on some counts and hangs on others bears only a tenuous relationship to preserving the finality of “an issue of ultimate fact [actu *132 ally] determined by a valid and final judgment.” Ashe, supra, at 443. There is no clear, unanimous jury finding here. In the unusual situation in which a factual finding upon which an acquittal must have been based would also logically require an acquittal on the hung count, all that can be said for certain is that the conflicting dispositions are irrational — the result of “mistake, compromise, or lenity.” Powell, supra, at 65. It is at least as likely that the irrationality consisted of failing to make the factual finding necessary to support the acquittal as it is that the irrationality consisted of failing to adhere to that factual finding with respect to the hung count. While I agree that courts should avoid speculation as to why a jury reached a particular result, ante, at 121-122, the Court’s opinion steps in the wrong direction by pretending that the acquittals here mean something that they in all probability do not.[3] Powell, supra, at 69, concluded that “the best course to take is simply to insulate jury verdicts” from review on grounds of inconsistency. In my view the same conclusion applies to claims that inconsistency will arise from proceeding to conviction on hung counts.
The burdens created by the Court’s opinion today are likely to be substantial. The Ashe inquiry will require courts to “examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.” 397 U. S., at 444 (internal quotation marks omitted). What is more, our holding in Abney v. United States, 431 U. S. 651 (1977), ensures that every defendant in Yeager’s shoes will be enti *133 tied to an immediate interlocutory appeal (and petition for certiorari) whenever his Ashe claim is rejected by the trial court. Abney, supra, at 662.
* * *
Until today, this Court has consistently held that retrial after a jury has been unable to reach a verdict is part of the original prosecution and that there can be no second jeopardy where there has been no second prosecution. Because I believe holding that line against this extension of Ashe is more consistent with the Court’s cases and with the original meaning of the Double Jeopardy Clause, I would affirm the judgment.
Justice Alito, with whom Justice Scalia and Justice Thomas join, dissenting.
I join Justice Scalia’s dissenting opinion. When a jury acquits on some counts but cannot reach agreement on others, I do not think that the Double Jeopardy Clause precludes retrial on the “hung” counts.
As a result of today’s decision, however, the law is now to the contrary, and I write separately to note that the Court’s holding makes it imperative that the doctrine of issue preclusion be applied with the rigor prescribed in Ashe v. Swenson, 397 U. S. 436 (1970). Loose application of the doctrine will lead to exceedingly complicated and protracted litigation, both in the trial court and on appeal, and may produce unjust results.
Ashe made it clear that an acquittal on one charge precludes a subsequent trial on a different charge only if “a rational jury” could not have acquitted on the first charge without finding in the defendant’s favor on a factual issue that the prosecution would have to prove in order to convict in the later trial. Id., at 444. This is a demanding standard. The second trial is not precluded simply because it is unlikely — or even very unlikely — that the original jury ac *134 quitted without finding the fact in question. Only if it would have been irrational for the jury to acquit without finding that fact is the subsequent trial barred. And the defendant has the burden of showing that “the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.” Dowling v. United States, 493 U. S. 342, 350 (1990).
The situation presented in a case like the one now before us — where the jury acquits on some counts but cannot reach a verdict on others — calls for special care in the application of the Ashe standard. In such a situation, the conclusion that the not-guilty verdicts preclude retrial on the hung counts necessarily means that the jury did not act rationally. But courts should begin with the presumption that a jury’s actions can rationally be reconciled. In an analogous situation — where it is claimed that a verdict must be set aside on the ground that the findings set out in a jury’s answers to special interrogatories are inconsistent — “it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: ‘Where there is a view of the case that makes the jury’s answers to special interrogatories consistent, they must be resolved that way.’” Gallick v. Baltimore & Ohio R. Co., 372 U. S. 108, 119 (1963) (quoting Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U. S. 355, 364 (1962)). A similar approach is appropriate here.
In the present case, there is reason to question whether the Ashe standard was met. It is clear that the fraud counts required proof of an element not necessary for conviction on the insider trading charge, namely, that petitioner “caused” material misstatements or omissions to be made at the January 20, 2000, analyst conference and in the press releases that formed the basis for the wire fraud counts. See App. 107 (jury instruction on count two (securities fraud)), 118 (jury instruction on counts three through six (wire fraud)). And it is far from apparent that the jury’s not-guilty verdict *135 on the fraud counts could not have rationally been based on a determination that this element — that petitioner caused the material misstatements or omissions — was not proved beyond a reasonable doubt.
The District Court Judge, who was of course familiar with the trial evidence, analyzed this issue as follows:
“The theory of the defense, evident in closing argument and the direct testimony of Defendant Yeager, argued that Defendant Yeager did not participate in the crafting of the statements in the press releases; did not participate in the creation of slides or statements presented at the analysts conference; and did not reach an agreement with any other person to make false, misleading, or deceptive statements or material omissions of fact.” App. to Pet. for Cert. 55a.
The record provides support for the District Court’s analysis. In his summation, petitioner’s attorney argued that “Scott Yeager had nothing to do with Counts 3 to 6 [the securities and wire fraud counts].” 54 Tr. 13384 (July 13, 2005). With respect to the January 20, 2000, conference that provided the basis for the securities fraud count, petitioner’s attorney emphasized that his client “didn’t say anything.” Id., at 13365. Counsel reiterated that petitioner “didn’t make a presentation. He didn’t make a statement.” Ibid.; id., at 13394. Counsel’s summation on this point summarized portions of petitioner’s trial testimony in which he minimized his involvement in matters relating to the conference. See 39 id., at 9932-9933, 9938-9947, and 9953 (June 17,2005).
With respect to the press releases on which the wire fraud counts were based, petitioner’s attorney argued: “Scott Yeager had nothing to do with the press releases.” 54 id., at 13384. “We didn’t make any press releases.” Id., at 13394. “Show me the evidence. Show me where Scott participated in a press release.” Id., at 13406. Again, counsel’s comments in summation tracked petitioner’s testimony denying *136 participation in the press releases. See 39 id., at 9911, 9913; 54 id., at 13384.
The above portions of the record suggest that a rational jury might have found that petitioner did not “cause” the misstatements or omissions at the conference or in the press releases. In light of the length and complexity of the trial record, I am not in a position to say with certainty that the Ashe standard was not met in this case, but the brief discussion of this question in the opinion of the Court of Appeals does not satisfactorily show that the District Court’s analysis was incorrect. Concluding that the not-guilty verdict on the securities fraud count could not have been based on a finding that respondent did not cause the misstatements or omissions at the conference, the Court of Appeals stated that petitioner “did not dispute” that he “helped shape the message of the conference presentations.” App. to Pet. for Cert. 20a. But there is surely tension between that statement and the previously mentioned portions of petitioner’s trial testimony and the defense summation.
Because the Court of Appeals held that Ashe does not apply when a jury acquits on some counts and hangs on others, that court’s analysis of the possible grounds for the jury’s securities fraud verdict was not necessary to support the court’s decision. Now that this Court has held that Ashe does govern in this context, a reexamination of the possible grounds for the fraud count acquittals is warranted.

 Because this case arises in federal court, the federal doctrine of issue preclusion might have prevented the Government from retrying Yeager even without Ashe’s innovation. See United States v. Oppenheimer, 242 U. S. 85, 87 (1916). But the District Court held that the jury in this case had not necessarily decided that Yeager lacked inside information (the fact that Yeager claims the Government is barred from relitigating), 446 F. Supp. 2d 719, 735 (SD Tex. 2006), and jurisdiction for this interlocutory appeal of that holding comes by way of the collateral order doctrine, which *129 encompasses claims of former jeopardy, Abney v. United States, 431 U. S. 651, 662 (1977). We have not accorded the same privilege to litigants asserting issue preclusion.

 That the Government issued a new indictment after the mistrial in this case does not alter the fact that, for double jeopardy purposes, retrial would have been part of the same, initial proceeding. As a matter of practice, it seems that prosecutors and courts treat retrials after mistrials as part of the same proceeding by filing superseding indictments under the original docket number. See, e. g., Superseding Information in United States v. Pena, Case No. 8:03-cr-476-T-23EAJ (MD Fla., Feb. 17, 2005). The Court implies that the new indictment in this case materially refined the charges, ante, at 115, but the only relevant changes were dropping of the other defendants and elimination of a few counts and related factual allegations. Compare App. 6-71 with App. 188-200.

 The Court claims that a jury’s failure to reach a verdict is not relevant evidence, ante, at 121, but its justifications for that statement are utterly unpersuasive. It is obvious that a failure to reach a verdict on one count “makefs] the existence” of a factual finding on a necessary predicate for both counts substantially “less probable,” Fed. Rule Evid. 401; how the Court can believe otherwise is beyond me.