Filed 5/4/15  P. v. Romo CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>SALVADOR RIOS ROMO,<br><br>        Defendant and Appellant. | B254527<br><br>(Los Angeles County<br>Super. Ct. No. VA130455)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>[No change in the judgment] |

IT IS ORDERED that the opinion filed in the above-captioned matter on April 22, 2015, be modified as follows:

1.  On page 2, in the second full paragraph, the third sentence is deleted, and replaced with the following:

> He also claims his second trial was precluded by the Double Jeopardy Clause of the California Constitution (see Cal. Const., art. I, § 15), that the evidence at his second trial was not sufficient to sustain his convictions, and that the trial court incorrectly instructed the jury.

2.  On page 6, in the second full paragraph, the fourth sentence is deleted, and replaced with the following:

> Here, Romo is not arguing that his second trial was barred by the federal Constitution's Double Jeopardy Clause.

3.  On page 8, footnote 5 is deleted, and replaced with the following:

As discussed above, under *Richardson, supra*, 468 U.S. 317, there are no implications under the federal Constitution's Double Jeopardy Clause when a mistrial is declared. Further, Romo expressly disclaims any violation of the federal Constitution's Double Jeopardy Clause in his case. We reject Romo's further contention that his second trial violated the California Constitution's Double Jeopardy Clause. (Cal. Const., art. I, § 15.) As explained in *People v. Anderson* (2009) 47 Cal.4th 92: "[W]hen a trial produces neither an acquittal nor a conviction, retrial may be permitted if the trial ended 'without finally resolving the merits of the charges against the accused.' (*Arizona v. Washington* [(1978) 434 U.S. 497,] 505 . . . .) In general, if a jury is discharged without returning a verdict, the double jeopardy bar applies unless manifest necessity required the discharge or the defendant consented to it. [Citation.] From the time of the United States Supreme Court's decision in *United States v. Perez* (1824) 22 U.S. (9 Wheat) 579 . . . , it has been established that the failure of a jury to agree on a verdict is an instance of 'manifest necessity' permitting retrial of the defendant 'because "the ends of public justice would otherwise be defeated."'" (*Richardson v. United States* (1984) 468 U.S. 317, 323-324 . . . .) California's application has long been the same. 'Like its federal counterpart, the state rule permits retrial following discharge of a jury that has been unable to agree on a verdict. [Citations.]" (*People v. Anderson, supra,* 47 Cal.4th at p. 104.) Further: "Unless sound reason exists, California courts will not interpret the California double jeopardy clause more broadly than its federal counterpart. [Citation.]" (*People v. Eroshevich* (2014) 60 Cal.4th 583, 588.)

This modification effects no change in the judgment.

The petition for rehearing filed by Appellant on April 24, 2015 is denied.

_____

BIGELOW, P. J.                    RUBIN, J.                    FLIER, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>SALVADOR RIOS ROMO,<br><br>        Defendant and Appellant. | B254527<br><br>(Los Angeles County<br>Super. Ct. No. VA130455) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul A. Sahagun, Judge.  Affirmed as modified.

David Andreasen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

_____

After a mistrial due to a hung jury, a second jury convicted appellant Salvador Rios Romo of two counts of aggravated sexual assault (sexual penetration) by duress or fear upon a child under the age of 14 years (counts 1 & 2; Pen. Code, § 269, subd. (a)(5)),[1] aggravated sexual assault (oral copulation) by duress or fear upon a child under the age of 14 years (count 4; § 269, subd. (a)(4)), and eight counts of committing a lewd act upon a child under the age of 14 years by duress or fear (counts 5, 6, 7, 8, 9, 10, 11, & 12; § 288, subd. (b)(1)).[2] The trial court sentenced Romo to three consecutive indeterminate terms of 15-years-to-life on counts 1, 2, and 4, plus eight consecutive determinate terms of 3 years each on counts 5 through 12, for a total determinate term of 24 years.

Though Romo made no mention of the issue before or at any time during his second trial, he now contends that all 11 of his convictions must be reversed because the trial court erred during *his first trial* when it denied his perfunctory motion for acquittal. (§ 1118.1.) He argues the judgment following his second trial must be reversed, and the case remanded to the trial court with directions to enter a judgment of acquittal on all 11 counts. He also claims the evidence at his second trial was not sufficient to sustain his convictions, and that the trial court incorrectly instructed the jury. We affirm.

## FACTS

Examined in light of the usual standard of review (see, e.g., *People v. Edwards* (2013) 57 Cal.4th 658, 715), the evidence established that Romo committed numerous sex acts upon Rocio R. over a period of years when she was between 8 and 11 years old. The acts occurred in the family home where Romo lived from 2003 to 2007, after he

---

[1]     All further undesignated section references are to the Penal Code.

[2]     The jury also returned three guilty verdicts for lewd act on a child as charged in counts 13, 14, and 15. (§ 288, subd. (a).) Because counts 13, 14, and 15 were charged as "alternative" lesser included offenses to the three aggravated sexual assault counts charged in counts 1, 2 and 4, the trial court dismissed counts 13, 14, and 15 after the jury returned its verdicts on counts 1, 2 and 4. Accordingly, counts 13, 14, and 15 are not relevant to the current appeal except to the extent they are relevant as lesser included offenses.

2

married Rocio's mother. During the time that Romo lived in the family home, Rocio called him "Dad," and he exercised parental control over her. Rocio's mother divorced Romo when Rocio was about 13 years old. Some years later, when Rocio was a senior year in high school, she told her mother about Romo's sexual conduct. A detective in the Los Angeles County Sheriff's Department, Special Victims Bureau, arrested Romo in mid-2013.

As noted above, there were two trials. At both trials, Rocio testified about various sex acts that Romo committed at different times. Romo testified in his own defense and denied sexual conduct of any kind with Rocio. Apart from the factual dispute as to the actual occurrence of the sexual acts, a significant aspect of the prosecution's evidence during both trials concerned the issue of whether Romo had accomplished the alleged sex acts against Rocio by use of duress or fear. The prosecution's evidence will be discussed in more detail below in addressing Romo's claims on appeal.

In November 2013, the People filed an amended information charging Romo with the 11 counts summarized above, and the charges were tried to a jury for the first time. The 11 charged offenses were submitted to the jury, each with instructions that lewd act upon a child was a lesser included offense.[3] The jury could not reach any verdicts, and the trial court declared a mistrial.

In February 2014, the charges were tried a second time to a jury. The 11 charges were submitted to the jury, and again the jury was instructed that lewd act upon a child was a lesser offense to each of the 11 counts. On February 13, 2014, the jury returned verdicts finding Romo guilty of all 11 charged offenses. The trial court thereafter sentenced Romo as noted above.

Romo filed a timely notice of appeal.

---

[3]    As noted above, the court submitted counts 13, 14, and 15 as "alternatives" to the aggravated sexual assault offenses charged in counts 1, 2, and 3. Substantively, counts 13, 14, and 15 were lesser included offenses.

DISCUSSION

**I.** **The Denial of a Motion for Judgment of Acquittal in the Mistrial is Not Subject to Appellate Review After Conviction in a Second Trial**

Romo contends his convictions must be reversed because the trial court erred during his first trial when it denied his motion for a judgment of acquittal pursuant to section 1118.1. The People contend that the trial court's ruling on Romo's section 1118.1 motion at his first trial is not subject to appellate review here because the issue is raised on an appeal from a judgment that was entered after a second trial. We agree with the People, but not precisely for the reasons they set forth.

The record we have on appeal relating to the 1118.1 motion from the first trial shows a commonly made, four-word, perfunctory motion by defense counsel: "Motion to dismiss, 1118. Submitted." In context, the following exchange ensued between the trial court and the attorneys outside the presence of the jury, shortly after the prosecution presented its final witness in its case-in-chief :

"[The Prosecutor]: The only other issues would be with lesser included offenses, but I assume we don't need to address that at this time.

"[The Court]: Correct. All right. So, the People move their exhibits into evidence?

[The Prosecutor]: Yes, your Honor.

[¶] . . . [¶]

[The Court]: Okay. Very good. Any objection to the exhibits?

[Defense Counsel]: No.

[The Court]: They're received, and the People rest?

[The Prosecutor]: Yes.

[The Court]: All right. Once we get the jury back out here, I'll have you move your exhibits into evidence in front of the jury, and you can rest in front of the jury.

[The Prosecutor]: Thank you.

[Defense Counsel]:  Motion to dismiss, 1118.  Submitted.

[The Court]:  All right.  That will be denied.  Okay.  [Is the defense] going to call any witnesses?

[Defense Counsel]:  I intend to call my client. . . .

[The Court]:  All right.  We'll proceed with Mr. Romo, then. . . .  Let's bring [the jurors] in, please."

At the second trial, Romo did not alert the trial court to the topic he now seeks us to review on appeal, even with four words.  Romo did not file a renewed motion for acquittal, request to stop the trial, seek to have the trial judge review the prior 1118.1 motion again, make a motion of once in jeopardy or otherwise bring up the issue at all before or at any time during the second trial.  Instead, he remained mute about his prior 1118.1 motion from the first trial and let the second trial proceed without a hint that he thought it was a problem, raising it now for the first time in this appeal.

The People rely on *Richardson v. United States* (1984) 468 U.S. 317 (*Richardson*) in support of the argument that a trial court's denial of a defendant's 1118.1 motion for an acquittal is not subject to appellate review on a defendant's appeal from a judgment entered after there has been a second trial.  This is the People's conclusion:  "Pursuant to *Richardson*, [Romo] was properly tried a second time after the first jury deadlocked and a mistrial was declared, regardless of the sufficiency of the evidence produced at the first trial."  We do not read *Richardson* to support the result urged by People, particularly given the context presented by Romo's current appeal.

In *Richardson*, a first trial against the defendant ended with a deadlocked jury and a mistrial.  Before the second trial, the defendant filed motion for a judgment of acquittal,[4] and a request to bar a second trial on the ground that retrial was unauthorized by the Double Jeopardy Clause of the federal constitution.  (*Richardson, supra*, 468 U.S.

---

[4]      Although unstated in the *Richardson* opinion, the defendant's motion apparently rested on Federal Rules of Criminal Procedure, rule 29, which governs motions for a judgment of acquittal in a federal criminal prosecution.

5

at pp. 318-319.) Defendant's constitutional claim was that the government failed to introduce sufficient evidence to establish his guilt beyond a reasonable doubt at his first trial. The trial court denied both motions. (*Id*. at p. 319.) The defendant then filed an appeal seeking interlocutory review of the federal trial court's rulings on his motions. (*Ibid*.)

The court of appeals dismissed the defendant's appeal for want of appellate jurisdiction. (*Richardson, supra*, 468 U.S. at p. 319.) The Supreme Court reversed the court of appeals' ruling on the issue of appellate court jurisdiction. Then, in a discussion which focused only on the issue of the defendant's claim under the Double Jeopardy Clause, the court explained that the federal trial court had correctly determined that a retrial was not constitutionally barred. (*Id*. at pp. 320-326.) In short, the Supreme Court held that a retrial after a mistrial is not barred by the federal constitution's Double Jeopardy Clause, and the quantum of proof at the first trial is not relevant in determining the constitutional double jeopardy question. The Supreme Court's disposition in *Richardson* reads: ". . . [W]e reverse the judgment of the Court of Appeals on the question of [appellate] jurisdiction, and on the merits conclude that the District Court was correct in denying [defendant]'s motion to bar retrial." (*Id*. at p. 326.)

*Richardson* holds that, as a matter of federal appellate law, orders denying a statutory motion for a judgment of acquittal and a motion to bar a retrial pursuant to the Double Jeopardy Clause are appealable orders. Further, the Double Jeopardy Clause does not bar a retrial after there is a mistrial. Neither of these rulings is particularly helpful to the People in arguing that Romo's claim that the ruling on his section 1118.1 motion for acquittal at his first trial is not subject to review in his current appeal. Here, Romo is not arguing that his second trial was barred by either California's or the federal constitution's Double Jeopardy Clause. Rather, Romo argues that the trial court erred at his first trial when it denied his motion pursuant to California statutory law (§ 1118.1) for a judgment of acquittal. *Richardson* does not discuss the availability of appellate review of a trial court's denial of defendant's section 1118.1 motion in a California Court of

Appeal, even where, as in Romo's current case, the order is challenged following a second trial.

Romo argues that the Legislature's intent in enacting section 1118.1 will best be effectuated by allowing appellate court review of an erroneous denial of a motion to acquit pursuant to section 1118.1, regardless of whether that review follows a first trial, or a second trial after an initial mistrial. Romo quotes from the California Supreme Court's opinion in *People v. Belton* (1979) 23 Cal.3d 516: "To be consistent with the Legislature's intent in enacting section 1118 [the statute governing a motion for mistrial at a bench trial], this court cannot afford the prosecution, having once failed to prove a prima facie case, a second opportunity to present the evidence against the defendant." (*Id*. at p. 527, fn. omitted.) Romo argues that whether the prosecution musters sufficient evidence in rebuttal after a section 1118.1 motion in a single trial (cf. *People v. Belton*, *supra*), or after a section 1118.1 motion at an initial trial, a hung jury, a mistrial, and then a second trial, the prosecution would be afforded a "second bite at the apple" to make its case in contravention of section 1118.1.

We view things quite differently. What we see is Romo strategically playing both sides against the middle -- proceeding with a second trial, hoping for an acquittal, all the while concealing his intent to seek a reversal and acquittals based on a motion in the first mistried case if he is convicted in the second trial. We find Romo's challenge to the trial court's denial of his section 1118.1 motion is not reviewable in the context of his current appeal, taken from a judgment of conviction entered following his second trial. We come to this conclusion because Romo's first trial ended in a mistrial. It has long been recognized in California that "[a] mistrial is equivalent to no trial." (*In re Alpine* (1928) 203 Cal. 731, 743, disapproved on another ground in *Sykes v. Superior Court* (1973) 9 Cal.3d 83, 90, fn. 7.) The ruling on Romo's section 1118.1 motion at his first trial, a statutory motion affecting the conduct of that first trial, essentially became non-existent

7

once the trial court declared a mistrial. The statutory ruling no longer existed as a material matter when it came to the time of his current appeal following his second trial.[5]

Our decision does not leave Romo without a remedy to challenge the trial court's ruling on his section 1118.1 motion at the first trial. Although Romo had no right to appeal at the end of his first trial (§ 1237), Romo could have, at any time prior to start of his second trial, including upon the grant of the mistrial at his first trial, filed a petition for writ of mandate in the court of appeal to challenge the ruling on his section 1118.1 motion at his first trial. Under such a procedure, if the reviewing court ruled that the section 1118.1 motion had been denied in error, then the court could have directed the trial court to enter a judgment of acquittal. The Legislature's intent in enacting section 1118.1 would still be preserved where a defendant brought a meritorious motion under section 1118.1. Such a procedure would also protect against the consumption of judicial resources by precluding a second trial where a defendant brought a meritorious motion for a judgment of acquittal.

Further, requiring a writ of mandate prior to second trial would protect against potential adverse implications for our state's appellate courts were we to find that a section 1118.1 motion is reviewable after a second trial. Defendants' token motions for acquittal pursuant to section 1118.1 are common, if not universal. Allowing a ruling on a section 1118.1 motion to be reviewed after a second trial would open the possibility of requiring our state's courts of appeal to review two trial records – the first trial court record to determine whether a section 1118.1 motion at a first trial had been properly denied, and then again to address issues raised from a second trial. And, were there two prior trials before a conviction at a third trial, then three trial records might need to be reviewed. In a large case, the review of multiple trial records could consume a significant amount of attorney and appellate court resources. In addition, if there is a

---

[5]   As discussed above, under *Richardson, supra*, 468 U.S. 317, there are no implications under the federal constitution's Double Jeopardy Clause when a mistrial is declared. Further, Romo expressly disclaims any double jeopardy violation in his case.

8

valid issue to review after a mistrial, it is a waste of scarce trial court resources to proceed with a second trial before resolving the issue.

For all of the reasons discussed above, we find that Romo's challenge to the trial court's ruling at his first trial denying his section 1118.1 motion is not subject to review in his current appeal, taken from a judgment of conviction entered following his second trial.[6]

## II.     Sufficiency of the Evidence

Romo next contends all of his convictions must be reversed because the evidence in this, his second trial, is insufficient to support the verdicts. We disagree.

When a defendant in a criminal case challenges a conviction as lacking evidentiary support, the reviewing court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence — evidence that is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (See, e.g., *People v. Johnson* (1980) 26 Cal.3d 557, 578.) The reviewing court must presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Further, the reviewing court may not reweigh the evidence and will not reverse a judgment even if a different verdict could reasonably have been returned. (*People v. Proctor* (1992) 4 Cal.4th 499, 529.) The testimony of a

---

[6]     Still, for the record, we do not find that the prosecution's evidence — at the time of Romo's motion for an acquittal at the first trial —was insufficient to allow the issue of duress or fear to be submitted to the jury. We are well aware of the standard of review applicable to appeals from the denial of an 1118.1 motion. (*People v. Cole* (2004) 33 Cal.4th 1158, 1213.) The evidence during the prosecution's case- in-chief at the first trial showed Romo was a father-figure, living in the family home, and exercising parental control. There was evidence, through Rocio's testimony, of threats. Though Rocio may have given stronger testimony at Romo's second trial, we disagree that the evidence at the first trial could not have sustained guilty verdicts on all 11 counts, had the jury returned guilty verdicts. (See *People v. Cochran* (2002) 103 Cal.App.4th 8 (*Cochran*); *People v. Veale* (2008) 160 Cal.App.4th 40 (*Veale*); and *People v. Senior* (1992) 3 Cal.App.4th 765 (*Senior*).) Accordingly, the motion for acquittal was properly denied.

single witness is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Rocio testified that Romo committed numerous sex acts upon her over a period when she was between 8 and 11 years old. Further, during this time, Romo lived in the family home with Rocio and her mother. Rocio called Romo "Dad," and he exercised parental control in the family home. A jury may find duress, even in the absence of evidence of explicit threats, when a young victim is abused by her father in the family home. (*Cochran, supra,* 103 Cal.App.4th at pp. 14-16.) We see no reason the outcome must be different as to a stepfather. Beyond this, Rocio testified that Romo did make threats ——— he told her that her family would be deported back to Argentina if she told anyone about the abuse. Perhaps, if there had been only a single sex act, followed by a threat, then Romo might be correct that such evidence showed only an attempt to dissuade a witness after the fact of sexual conduct. But in Romo's case, there is evidence of a continuing pattern of abuse and the jury could reasonable infer that Rocio felt duress to submit throughout the entire period of the abuse. Further, Rocio testified that during the abuse, Romo would "always bring up the fact that if I ever said anything that – he would just scare me with my family, with deporting us or that my mom wouldn't have anybody there to support her and all the hard work that she did to come to this country, it would just be thrown in the trash and we would have to go back to Argentina." Rocio testified Romo made such comments "often." Thus, there is evidence that threats were part of each incident of wrongful sexual conduct. Rocio testified that she was afraid that Romo would "do something" to her family if she did not allow him to abuse her. Romo's arguments on appeal do not persuade this court that more was needed to support the jury's finding that Romo accomplished the sex acts through the use of fear and or duress.

The evidence presented in Romo's case is similar to evidence found sufficient in *Veale, supra,* 160 Cal.App.4th at page 47 [young victim's fear that stepfather would harm her or her mother if she told anyone that he was molesting her was evidence of duress]; *Cochran*, *supra*, 103 Cal.App.4th at page 16 [implicit threat that molestation victim would break up the family if she did not engage in sex acts with her father was evidence

10

of duress]; and *Senior, supra,* 3 Cal.App.4th at page 775 [father's warning to daughter that talking about molestations could result in divorce was psychological pressure on victim to submit and was evidence of duress].)

Romo relies upon *People v. Hecker* (1990) 219 Cal.App.3d 1238 (*Hecker*) for a different result. In *Hecker*, the Court of Appeal essentially rejected the proposition that duress may be established by a victim's testimony that the defendant urged her not to disclose sexual conduct, reasoning that "such testimony establishes merely the threat of hardship directed at 'later *disclosure* of the sex acts and not [the failure to perform] the sex acts themselves.'" (*Id.* at p. 1251, fn. 7, quoting from *People v. Bergschneider* (1989) 211 Cal.App.3d 144, 154, fn. 8.)

We add our voice to the cases declining to adhere strictly to the *Hecker* analysis. For example, in *Cochran, supra*, 103 Cal.App.4th 8, the Court of Appeal found *Hecker* to be "overbroad" for the following reasons: "The very nature of duress is psychological coercion. A threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in [a sex act], may constitute a threat of retribution and may be sufficient to establish duress, particularly if the child is young and the defendant is her parent. We also note that such a threat represents a defendant's attempt to isolate the victim and increase or maintain her vulnerability to his assaults." (*Cochran, supra*, 103 Cal.App.4th at p. 15.)

In *Senior, supra,* 3 Cal.App.4th 765, the Court of Appeal expressed similar sentiments, rejecting the distinction recognized in *Hecker* for the following reasons: "Defendant relies on opinions that distinguish between warnings enjoining nondisclosure and noncompliance. (*People v. Bergschneider, supra*, 211 Cal.App.3d at p. 154, fn. 8; *People v. Hecker* (1990) 219 Cal.App.3d 1238, 1251, fn. 7 . . . ].) We doubt that young victims of sexual molestation readily perceive this subtle distinction. A simple warning to a child not to report a molestation reasonably implies the child should not otherwise protest or resist the sexual imposition." (*Senior, supra*, 3 Cal.App.4th at p. 775; see also *Veale, supra*, 160 Cal.App.4th at p. 48.)

11

We find there was sufficient evidence to support all of Romo's convictions.

## III.    Instructional Error

Romo's next contention is that his convictions for aggravated sexual assault as charged in counts 1, 2, and 4 must be reversed because the instructions allowed the jury to find him guilty "if they found the acts were accomplished by means of 'fear' without having to find that the fear was of immediate and unlawful bodily injury." The People concede there was an error but argue it was harmless. We agree.

As to the three counts of aggravated sexual assault of a child charged in counts 1, 2 and 4, the trial court instructed the jury that the acts needed to be accomplished by the use of "duress or fear." With respect to "fear," the instructions stated "An act is accomplished by fear if the other person is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it." Romo contends the amplifying fear instruction was inadequate because it did not explain that "fear" had to be "fear of immediate and unlawful bodily injury." The People's response is that "[i]t appears that [Romo] is correct." As noted, we agree.

The offense of aggravated sexual assault of a child in violation of section 269, subdivision (a)(5), requires proof that the defendant accomplished a sex act by the use of " 'force, violence, duress, menace, or *fear of immediate and unlawful bodily injury on the victim or another person.*' " (*Cochran*, *supra*, 103 Cal.App.4th at p. 13 (italics added); see also *People v. Iniguez* (1994) 7 Cal.4th 847, 856.) At Romo's trial, the trial court failed to include the further instruction that defendant must accomplish the sex act, "by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to another person." (See, CALCRIM No. 1045.) Here, the instructions curtailed the fear element by stating, in essence, that imparting fear — of an unfocused nature — and taking advantage of the fear is sufficient to prove the charged crime. The fear instruction should have related fear to bodily injury.

We disagree, however, with Romo that the instructional error requires reversal of the jury's guilty verdicts in counts 1, 2, and 4, because the jury was properly instructed on duress. "When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground." (*People v. Chiu* (2014) 59 Cal.4th 155, 167.) "An instructional error presenting the jury with a legally invalid theory of guilt does not require reversal . . . if other parts of the verdict demonstrate that the jury necessarily found the defendant guilty on a proper theory." (*People v. Pulido* (1997) 15 Cal.4th 713, 727.)

Here, the trial court properly instructed the jury on the element of duress as to all 11 counts, explaining that duress "means a direct implied threat of force, violence, danger, hardship, or retribution that is enough to cause a reasonable person of ordinary sensitivity to do or submit to something that he or she would not otherwise do or submit to." The prosecutor relied duress as to all counts, and argued to the jury that the same evidence fulfilled that element of the offense. Specifically, that Romo used his position as a father figure, coupled with his threats to have Rocio and her mother deported, and with threats of family and financial hardship, all to the end of causing Rocio to submit. To the extent the prosecutor's argument to the jury used the word "fear," or discussed that Rocia had been "afraid," it was in the context of duress, which, as noted here, includes an aspect of fear. We have no doubt that the jurors focused on the issue of duress, and saw the distinct instructions concerning "fear" to be superfluous. Thus, to the extent the distinct "fear" instructions were deficient in that they did not relate "fear" to "bodily injury," we see no prejudice. Further, the trial court instructed the jurors that "some of [the] instructions may not apply." As to the issue of duress, which was the prime focus of Romo's trial beyond the occurrence of the sex acts themselves, we see nothing in the trial record to support a conclusion that the burden of proof was lessened.

Any instructional error was harmless beyond a reasonable doubt because the evidence that Romo accomplished his sex acts on Rocio with duress was overwhelming. Romo committed the sex acts on Rocio in the family home when she was only 8 to 11 years old, and he was her father figure. He threatened her that her family would be deported back to Argentina if she told anyone about the molestations. He also threatened that the family would suffer adverse financial hardship if she told anyone of the sex acts. In light of the strong evidence of duress, we find beyond a reasonable doubt that the jury based its finding of aggravation on duress.

## IV.     The Section 290.3 Sex Offender Fine Should Be Reduced

The trial court imposed a $300 sex offender fine pursuant to section 290.3. Romo contends that the fine should be reduced to $200, the amount of the fine at the time he committed his sex offenses. The People concede the point, and we agree that the amount of the fine was incorrect.

Section 290.3 requires the imposition of a fine on any person convicted of certain sex offenses, including certain of those for which Romo stands convicted. While the current statute provides for a fine for a first conviction in the amount of $300, prior to 2006, the fine for a first conviction was $200. (See Stats. 2006, ch. 69, § 27, effective July 12, 2006.) When a person is convicted of a qualifying offense, the section 290.3 fine should be imposed in the amount applicable at the time the defendant committed his or her offense to avoid an ex post facto violation. (See *People v. Voit* (2011) 200 Cal.App.4th 1353, 1372.)

The jury found that the offenses in counts 1, 2, and 4 through 7 were committed between March 11, 2003 and March 10, 2007. It found that the offense in count 8 was committed between March 11, 2006 and March 10, 2007. It found that the offenses in counts 9 through 12 were committed between March 11, 2005 and March 10, 2006. The jury did not make findings that any offenses were committed on specific dates, and the jury's verdicts do not show that any offenses were actually committed on or after mid-2006. Accordingly, the sexual offender fine should be reduced to $200. (See *People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248-1249.)

14

## DISPOSITION

The judgment is modified to reflect $200 sex offender fines pursuant to section 290.3.  The abstract of judgment should be amended to reflect the modification and a copy be forwarded to the California Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

BIGELOW, P.J.

We concur:

RUBIN, J.

FLIER, J.

15